# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:20-CR-00100 (KAD) |
| | ) | |
| v. | ) | |
| | ) | |
| LUIS CARRASQUILLO, JASHUA | ) | |
| CARRASQUILLO, AARON CLAYTON, | ) | |
| DARRICK SHELBY, HECTOR | ) | |
| UMPIERRE, DARRIN HARRIS, | ) | |
| JERMAINE NEWELL, FRANK BIGGS, | ) | |
| and KELLY MCGILL | ) | August 2, 2021 |

## MEMORANDUM OF DECISION
## RE: MOTION TO SEVER (ECF NO. 222)[1]

Kari A. Dooley, United States District Judge

Pending before the Court is a motion to sever filed by Defendant Kelly McGill ("McGill") in this multi-defendant prosecution of an alleged narcotics conspiracy.[2] In her motion to sever, McGill argues that (1) her joinder was improper under Rule 8 and (2) even if joinder was proper, severance is warranted pursuant to Rule 14 for a variety of reasons, to include the prejudicial spillover effect of evidence against her co-defendants and the infringement on her right to present a complete defense.[3] Although the Government asserts that joinder of all defendants was proper, as a practical matter, in light of COVID-19 related logistical obstacles to conducting multi-defendant trials, the Government agrees that severance to some extent may be necessary. Accordingly, the Government proposes that defendants McGill, Aaron Clayton ("Clayton"), and Frank Biggs ("Biggs") be tried together.[4] However, McGill maintains that she should be tried alone

---

[1] The original Motion to Sever is found at ECF No. 187. Pursuant to the Court's June 8, 2021 Order (ECF No. 221), the original motion was sealed by the Court and Defendant McGill filed a redacted version at ECF No. 222.

[2] Defendants Darrick Shelby and Darrin Harris have entered guilty pleas.

[3] McGill also moved for a speedy trial but has since withdrawn that aspect of the motion.

[4] The Government proposes that McGill and Clayton be tried together as to "eliminate[] unnecessary exposure of a Government cooperator to appearing for testimony in two separate trials," among other reasons. (ECF No. 192 at 11–12).

and Clayton objects to being tried with McGill to the extent that McGill intends to comment on his failure to testify if that is his choice at trial.

For the reasons set forth below, the Court finds that McGill and Clayton can and should be tried together.[5] Accordingly, the Motion to Sever is GRANTED in part.

**Discussion**

**Rule 8 Joinder**

Rule 8 of the Federal Rules of Criminal Procedure provides that "[t]he indictment . . . may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." FED. R. CRIM. P. 8(b). Accordingly, "joinder is proper where two or more persons' criminal acts are unified by some substantial identity of facts or participants, or arise out of a common plan or scheme." *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir. 1990) (internal quotation marks and citation omitted). Rule 8(b) generally reflects a policy determination that "public considerations of economy and speed outweigh possible unfairness to the accused." *United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir. 1988) (internal quotation marks and citation omitted) (discussing Rule 8(a), but noting that Rule 8(b) "reflects a similar policy").

McGill argues that joinder is improper largely because, with the exception of Clayton and Darrick Shelby ("Shelby"), she has no connection to any of her co-defendants. According to McGill's review of the discovery, other than her alleged presence in the background of one phone call between Shelby and Clayton and at one meeting between the same, there is no evidence connecting her to the distribution or possession of narcotics. Additionally, McGill argues that

---

[5] Although the Government included Biggs as an appropriate third defendant to be tried with Clayton and McGill, counsel for Biggs filed information indicating that Biggs is experiencing significant health issues. While not addressing the question of severance directly, the Court construes Biggs' submission as an indication that these health issues might preclude Biggs from participating in the earlier severed trial.

neither Shelby nor Clayton can provide evidence that McGill had any awareness of the conspiracy. Thus, given the allegedly large volume of evidence against her co-defendants, McGill asserts that she will be convicted "by osmosis" rather than by evidence implicating her in the conspiracy thereby rendering joinder improper.

The Court disagrees. "The established rule is that a non-frivolous conspiracy charge is sufficient to support joinder of defendants under Fed. R. Crim. P. 8(b)." *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1988). According to the Government, the conspiracy centered around Clayton who, after being supplied by Luis and Jashua Carrasquillo, would supply numerous subordinate dealers. Although McGill is strident that the evidence against her is weak, she acknowledges that she is alleged to have participated in the conspiracy "by selling and/or delivering small amounts of narcotics at the direction of one of the co-defendants," (ECF No. 222 at 2) and that two of the co-defendants, Clayton and Shelby, know her. She further acknowledges that there is at least some evidence, though disputed, connecting her to the conspiracy consisting of her appearance in the background of a phone call and her presence at a meeting between Shelby and Clayton.[6] Thus, despite their different roles, McGill's and Clayton's actions are intertwined and evidence as to both will be relevant to establish the existence of the conspiracy. Therefore, joinder of McGill in this non-frivolous conspiracy charge was proper under Rule 8.

**Rule 14 Severance**

Rule 14 of the Federal Rules of Criminal Procedure permits severance of properly joined defendants, at the discretion of the trial court, to avoid prejudice to a defendant or the government. FED. R. CRIM. P. 14(a). Nevertheless, there is a strong and well-settled preference that defendants

---

[6] The Government asserts that there is evidence that McGill and Shelby purchased cocaine and crack cocaine from Clayton during this meeting and that McGill and Shelby were soon thereafter apprehended by police who seized approximately 84 grams of powder cocaine and 84 grams of crack cocaine from Shelby's vehicle, which was being driven by McGill. Though, McGill notes in her reply that she was not arrested as a result of the stop.

3

who are indicted together should be tried together. *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003); *see also Richardson v. Marsh*, 481 U.S. 200, 209 (1987) ("Joint trials play a vital role in the criminal justice system[.]"). "This preference is particularly strong where . . . the defendants are alleged to have participated in a common plan or scheme." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998); *see also United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991). As the Supreme Court has explained:

> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. . . . Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

*Richardson*, 481 U.S. at 210.

A defendant claiming prejudice by joinder must demonstrate prejudice that is "sufficiently severe [as] to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials." *United States v. Lanza*, 790 F.2d 1015, 1019 (2d Cir. 1986) (quoting *United States v. Panza*, 750 F.2d 1141, 1149 (2d Cir. 1984)). District courts have wide discretion in deciding whether to sever trials, and a defendant seeking review of denial of severance under Rule 14 bears an "extremely difficult burden." *United States v. Casamento*, 887 F.2d 1141, 1149–50 (2d Cir. 1989) (internal quotation marks omitted).

On this issue, McGill advances a variety of arguments in favor of severance. However, on the more limited question of whether it is appropriate for her to be tried alongside Clayton, McGill advances two arguments in favor of severance: (1) the need to avoid the prejudicial spillover effect of evidence against her co-defendant in light of McGill's *de minimis* role in the alleged conspiracy and (2) the inevitable clash of her constitutional right to present a complete defense and Clayton's

Fifth Amendment right not to testify. Clayton also argues that severance from McGill is necessary to protect his Fifth Amendment right not to testify should he choose to exercise it trial. The Government objects to severance as between McGill and Clayton.

### Prejudicial Spillover

McGill alleges prejudicial spillover in light of her *de minimis* role in the alleged conspiracy and the dearth of evidence as to her involvement therein. Specifically, McGill warns of the prejudice she would suffer by the admission of co-defendant confessions, if any,[7] regarding their participation in the conspiracy despite their lack of familiarity with McGill. McGill also asserts that the "sheer volume" of evidence against her co-defendants, when compared with the dearth of evidence against her, tips the scale in favor of severance. Although the risk of "spillover" prejudice between co-defendants can be a basis for severance, "[a] defendant raising a claim of prejudicial spillover bears an extremely heavy burden," particularly where there is a conspiracy charged. *United States v. Friedman*, 854 F.2d 535, 563 (2d Cir. 1988). "The typical spillover claim is that evidence admissible against only one defendant is prejudicial to all defendants" and that individual or separate trials would avoid that prejudice. *United States v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992). Once a defendant is charged as a member of a conspiracy, however, "all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against the defendant." *Salameh*, 152 F.3d at 111; *e.g.*, *Friedman*, 854 F.2d at 563 (holding that defendant did not suffer prejudicial spillover because "most of the evidence of which he complains would have been admissible against him in a separate trial as acts of co-conspirators in the furtherance of a conspiracy" (internal quotation marks omitted)).

---

[7] McGill has not received in discovery any purported confessions by her co-defendants. Nor has she received Jencks Act material or other disclosures typically made closer to trial. At the time of oral argument, McGill had received supplemental discovery, but had not had the opportunity to review it.

Here, McGill has not identified any particular evidence which she claims would be admissible against one or some of the defendants but not against her. Indeed, the defendants are accused of conspiring to operate and operating a narcotics distribution network. As such, any evidence that is admissible against one defendant would likely be admissible in a separate trial against the others as probative of the existence of the conspiracy or the network. If, during the trial, evidence is identified as being admissible only against Clayton, but not against McGill, the Court would give an appropriate limiting instruction. In addition, the Court's jury instructions will make clear that the jury must consider each defendant separately; must render verdict as to each defendant separately and that a finding of guilty as to one defendant does not require the same verdict for another defendant. Accordingly, the potential for prejudicial spillover evidence does not overcome the strong preference for joinder in this case. *See Zafiro*, 506 U.S. at 539 ("less drastic measures [than severance], such as limiting instructions, often will suffice to cure any risk of prejudice").

### The Potential Conflict Between the Defendants' Constitutional Rights

A potential clash of constitutional rights between McGill and Clayton arises from McGill's anticipated defense at trial. She has indicated that she might, in arguing the utter lack of evidence against her, comment on Clayton's silence, should he choose not to testify. In the face of such an indication, Clayton asserts that any such commentary would violate his Fifth Amendment right to not testify. On the other hand, McGill asserts that if she is prevented from commenting on Clayton's silence, the Court would violate her right to present a complete defense. *See United States v. Crandall*, 748 F.3d 476, 481 (2d Cir. 2014) ("[T]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the [government's] accusations. This right stems from the Sixth Amendment's Compulsory Process and Confrontation

Clauses, and guarantees a criminal defendant is provided with a meaningful opportunity to present a complete defense." (internal quotation marks and citations omitted) (discussed in the context of providing the defendant accommodations at trial)).

The Court recognizes that if McGill were to comment on Clayton's decision not to testify, Clayton's Fifth Amendment right to not testify would likely be violated. *See United States v. Caci*, 401 F.2d 664, 672 (2d Cir. 1968) ("had counsel for [defendant] been permitted to comment on [co-defendant's] refusal to take the stand, [co-defendant's] rights under the fifth amendment would have been violated"), *cert. denied*, 394 U.S. 917; *United States v. Owen*, 500 F.3d 83, 92 n.6 (2d Cir. 2007). Thus, at a joint trial, McGill would not likely be permitted to comment on Clayton's silence. The question then is whether this possibility requires severance to protect McGill's right to present a complete defense.

In *Caci*, the Second Circuit suggested that severance is appropriate only upon a showing of "real prejudice" if the defendant "is not permitted to comment on the silence of a co-defendant." 401 F.2d at 672 (internal quotation marks omitted). For example, in *De Luna v. United States*, two co-defendants, de Luna and Gomez, were on trial for a drug offense. 308 F.2d 140, 141 (5th Cir. 1962). At trial, the defendants presented conflicting theories of the case, each accusing the other of being the "sole culprit." *Id*. at 142. Gomez decided to testify while de Luna remained silent. *Id*. At closing, Gomez's attorney attacked de Luna's decision not to testify saying:

> Well, at least one man was honest enough and had courage enough to take the stand and subject himself to cross examination and tell you the whole story, and tell you that, Yes, I first colored the story, but when I got back to my senses I told the truth, and that's the whole thing. You haven't heard a word from [de Luna].

*Id*. at 143 (internal quotation marks omitted). On appeal, the Fifth Circuit reversed de Luna's convictions and ordered a separate trial noting that "[i]f an attorney's duty to his client should require him to draw the jury's attention to the possible inference of guilt from a co-defendant's

silence, the trial judge's duty is to order that the defendants be tried separately." *Id*. at 141. The inference to be drawn from this holding is that if the court had prevented Gomez from commenting on de Luna's silence, Gomez might have suffered "real prejudice" by not being able to use every argument at his disposal.

The Court cannot find "real prejudice" to McGill if she is tried with Clayton on the present record. As suggested by *Caci*, severance is not warranted whenever a defendant is prevented from commenting on a co-defendant's silence. For example, in *United States v. Kahn*, the Seventh Circuit found that the trial court did not err in denying severance despite preventing two co-defendants from commenting on another defendant's refusal to testify where "the extensive evidence and testimony did not present the jury the dilemma of mutually exclusive defenses, with no evidentiary basis for judgment between them, in which a comment on the failure to testify would indicate which horn of the dilemma should be seized." 381 F.2d 824, 841 (7th Cir. 1967); *see also Hayes v. United States*, 329 F.2d 209, 221–22 (8th Cir. 1964) (finding that the trial court did not err in preventing defendant from commenting on co-defendants' choices not to testify where defendant showed no prejudice and it was "difficult to perceive any benefit that might flow to [the defendant] by permitting him to call the attention of the jury to the fact that some of his codefendants did not testify").

Here, as McGill acknowledged, the extent to which she might want to comment on Clayton's silence, should he choose not to testify, is as yet unknown.[8] McGill has not received all of the pretrial discovery, to include Jencks Act material, the evidence has not been presented and

---

[8] Although McGill indicated in her motion that the silence of her co-defendants with respect to her was "central" to her defense, this assertion was made in the context of all co-defendants to include those with whom she has no relationship. The Court recognizes the evidentiary value of these defendants being unable to identify McGill as a member of the conspiracy, but this argument, as clarified at oral argument, does not have the same force or application with respect to Clayton. As discussed above, the evidence against Clayton and McGill overlaps and there is no question that Clayton knows McGill and that there will be evidence of a meeting between McGill, Clayton and Shelby.

the witness testimony remains unheard. Perhaps of greatest significance, there is no claim that McGill's defense and Clayton's defense are mutually exclusive as was the case in *De Luna*. Indeed, McGill's defense is not to implicate Clayton or others, but to decry the dearth of evidence against her.[9] Accordingly, McGill has not established that it is so advantageous or critical to her defense to comment on Clayton's failure to testify so as to establish "real prejudice" for purposes of severance under Rule 14. Notably, the entire question becomes academic should Clayton decide to testify, a decision he has not made. Further, the circumstances presented here are likely present in every multi-defendant case in which some defendants are alleged to be minor participants while others are alleged to be of the "kingpin" variety. Granting severance under these circumstances would defeat the recognized preference of trying co-defendants together. *See De Luna*, 308 F.2d at 156 (Bell, J., concurring) (recognizing an "intolerable procedural problem" that would result from the notion that a defendant can force a severance whenever she represents that she will comment on the silence of a non-testifying co-defendant). Because McGill has not identified any "real prejudice," the Court finds that severance as between McGill and Clayton is not warranted.

**Conclusion**

For all of these reasons, the motion to sever is GRANTED in part. Defendants McGill and Clayton shall be severed from the other defendants and tried together on the current trial schedule. The Court will schedule a telephonic scheduling conference with respect to the remaining defendants.

---

[9] Specifically, counsel indicated that his "lack of evidence" argument might include the observation that Clayton offered no evidence tying McGill to the conspiracy. Such an observation does not call on the jury to infer that Clayton is more likely guilty because he failed to testify as was clearly the case in *De Luna*. It is merely an example of the dearth of evidence against McGill, an argument and a defense that is still available to her though without specifically commenting on Clayton's failure to testify.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of August 2021.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE